

**U.S. Department of Justice**

*United States Attorney*
*District of Maryland*

| | | |
|---|---|---|
| *Judson T. Mihok*<br>*Assistant United States Attorney*<br>*Judson.Mihok@usdoj.gov*<br>PEB 03.09.22 | *Suite 400*<br>*36 S. Charles Street*<br><br>*Baltimore, MD 21201-3119* | *DIRECT: 410-209-4903*<br>*MAIN: 410-209-4800*<br><br>*FAX: 410-962-3091* |

JSDC- BALTIMORE
'22 MAY 4 AM 11:44

March 16, 2022

Katherine Tang Newberger
Elizabeth Lopez
Federal Public Defender's Office
100 S. Charles Street, Tower 2
Baltimore, MD 21201

    Re:    *United States v. Calvin Henry Sampson, III*
             Criminal No. RDB-20-0366

Dear Counsel:

       This letter, together with the Sealed Supplement, confirms the plea agreement (this "Agreement") that has been offered to your client, Calvin Henry Sampson, III (hereinafter "Defendant"), by the United States Attorney's Office for the District of Maryland ("this Office"). If the Defendant accepts this offer, please have the Defendant execute it in the spaces provided below. If this offer has not been accepted by Friday, April 1, 2022, it will be deemed withdrawn. The terms of the Agreement are as follows:

Offense of Conviction

       1.     The Defendant agrees to plead guilty to Count Five of the Indictment now pending against him, charging him with Possession of Child Pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B). The Defendant admits that the Defendant is, in fact, guilty of the offense and will so advise the Court.

Elements of the Offense

       2.     The elements of Count Five of the Indictment to which the Defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are as follows:

       That on or about the dates specified in the Indictment, in the District of Maryland, and elsewhere, the Defendant:

          a.     Knowingly possessed and accessed a visual depiction with intent to view;

b.	That the visual depiction was transported in or affecting interstate or foreign commerce or the visual depiction was produced using materials that had been transported in or affecting interstate or foreign commerce;

c.	That the visual depiction was of one or more prepubescent minors engaged in sexually explicit conduct; and

d.	That the Defendant knew of the sexually explicit nature of the material and that the visual depictions were of actual minors engaged in that sexually explicit conduct.

Penalties

3.	The maximum penalties provided by statute for the offense to which the Defendant is pleading guilty are as follows:

| COUNT | STATUTE | MANDATORY MINIMUM IMPRISONMENT | MAXIMUM IMPRISONMENT | MAXIMUM SUPERVISED RELEASE | MAXIMUM FINE | SPECIAL ASSESSMENT |
|---|---|---|---|---|---|---|
| 1 | 18 U.S.C. § 2522(A)(5)(b) | - | 20 years | Life | $250,000 | $100/$5,000 (18 U.S.C. § 3014) |

a.	Prison: If the Court orders a term of imprisonment, the Bureau of Prisons has sole discretion to designate the institution at which it will be served.

b.	Supervised Release: If the Court orders a term of supervised release, and the Defendant violates the conditions of supervised release, the Court may order the Defendant returned to custody to serve a term of imprisonment as permitted by statute, followed by an additional term of supervised release.

c.	Restitution: The Court may order the Defendant to pay restitution pursuant to 18 U.S.C. §§ 3663, 3663A, and 3664, and 18 U.S.C. § 2259(b)(2)(b) (mandatory restitution of no less than $3,000.00 for victims of child exploitation).

d.	Special Assessments: The Court must order the Defendant to pay a special assessment pursuant to 18 U.S.C. § 3013 and may order additional special assessments for certain convictions pursuant to 18 U.S.C. §§ 3014 and 2259A.

e.	Payment: If a fine or restitution is imposed, it shall be payable immediately, unless the Court orders otherwise under 18 U.S.C. § 3572(d). The Defendant may be required to pay interest if the fine is not paid when due.

f.	Forfeiture: The Court may enter an order of forfeiture of assets directly traceable to the offense, substitute assets, and/or a money judgment equal to the value of the property subject to forfeiture.

Rev. August 2018

g.       Collection of Debts: If the Court imposes a fine or restitution, this Office's Financial Litigation Unit will be responsible for collecting the debt. If the Court establishes a schedule of payments, the Defendant agrees that: (1) the full amount of the fine or restitution is nonetheless due and owing immediately; (2) the schedule of payments is merely a minimum schedule of payments and not the only method, nor a limitation on the methods, available to the United States to enforce the judgment; and (3) the United States may fully employ all powers to collect on the total amount of the debt as provided by law. Until the debt is paid, the Defendant agrees to disclose all assets in which the Defendant has any interest or over which the Defendant exercises direct or indirect control. Until the money judgment is satisfied, the Defendant authorizes this Office to obtain a credit report in order to evaluate the Defendant's ability to pay, and to request and review the Defendant's federal and state income tax returns. The Defendant agrees to complete and sign a copy of IRS Form 8821 (relating to the voluntary disclosure of federal tax return information) and a financial statement in a form provided by this Office.

## Sex Offender Registration

4.       The Defendant understands and agrees that, as a consequence of the Defendant's conviction for the crimes to which the Defendant is pleading guilty, the Defendant will be required to register as a sex offender in the place where the Defendant resides, is an employee, and is a student, pursuant to the Sex Offender Registration and Notification Act (SORNA), and the laws of the state of the Defendant's residence. Failure to do so may subject the Defendant to new charges pursuant to 18 U.S.C. § 2250.

## Waiver of Rights

5.       The Defendant understands that by entering into this Agreement, the Defendant surrenders certain rights as outlined below:

a.       If the Defendant had pled not guilty and persisted in that plea, the Defendant would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed.

b.       If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community. Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count. The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

c.       If the Defendant went to trial, the Government would have the burden of proving the Defendant guilty beyond a reasonable doubt. The Defendant would have the right to confront and cross-examine the Government's witnesses. The Defendant would not have to present any defense witnesses or evidence whatsoever. If the Defendant wanted to call witnesses

in defense, however, the Defendant would have the subpoena power of the Court to compel the witnesses to attend.

    d.  The Defendant would have the right to testify in the Defendant's own defense if the Defendant so chose, and the Defendant would have the right to refuse to testify. If the Defendant chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from the Defendant's decision not to testify.

    e.  If the Defendant were found guilty after a trial, the Defendant would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the charges. By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

    f.  By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to appeal the sentence. By pleading guilty, the Defendant understands that the Defendant may have to answer the Court's questions both about the rights being given up and about the facts of the case. Any statements that the Defendant makes during such a hearing would not be admissible against the Defendant during a trial except in a criminal proceeding for perjury or false statement.

    g.  If the Court accepts the Defendant's plea of guilty, the Defendant will be giving up the right to file and have the Court rule on pretrial motions, and there will be no further trial or proceeding of any kind in the above-referenced criminal case, and the Court will find the Defendant guilty.

    h.  By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status, including possible denaturalization. The Defendant recognizes that if the Defendant is not a citizen of the United States, or is a naturalized citizen, pleading guilty may have consequences with respect to the Defendant's immigration status. Under federal law, conviction for a broad range of crimes can lead to adverse immigration consequences, including automatic removal from the United States. Removal and other immigration consequences are the subject of a separate proceeding, however, and the Defendant understands that no one, including the Defendant's attorney or the Court, can predict with certainty the effect of a conviction on immigration status. The Defendant is not relying on any promise or belief about the immigration consequences of pleading guilty. The Defendant nevertheless affirms that the Defendant wants to plead guilty regardless of any potential immigration consequences.

Advisory Sentencing Guidelines Apply

  6.  The Defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. § 3551-3742 (excepting 18 U.S.C. § 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991 through 998. The Defendant further understands that the Court will impose a

sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

### Factual and Advisory Guidelines Stipulation

7. This Office and the Defendant stipulate and agree to the Statement of Facts set forth in Attachment A, which is incorporated by reference herein. This Office and the Defendant further agree to the following Sentencing Guidelines:

Group One: Possession of Child Pornography

    a. Pursuant to USSG §2G2.2(a)(1), the base offense level for possession of child pornography is 18.

    b. Pursuant to USSG §2G.2(b)(2), there is a two (2) level increase because the depictions involved prepubescent minors or minors under the age of twelve (12). [Subtotal: 20].

    c. Pursuant to USSG §2G2.2(b)(6), there is a two (2) level increase because the offense involved the use of a computer. [Subtotal: 22].

    d. Pursuant to USSG §2G2.2(b)(5), there is a five (5) level increase because the defendant engaged in a pattern of activity involving the sexual abuse or exploitation of a minor. [Subtotal: 27]

    e. Pursuant to USSG §2G2.2(b)(7)(C), there is a four (4) level increase because the offense involved more than 300 images. [Subtotal: 31].

Group Two: Sexual Exploitation of Minor Victim 1 on July 26, 2019

    e. The base offense level for sexual exploitation of a child is 32, pursuant to USSG §2G2.1(a).

    f. Pursuant to USSG §2G2.1(b)(1)(B), there is a four (4) level increase because the victim in this case was under the age of 12 at the time of the offense. [Subtotal: 36].

    g. Pursuant to USSG §2G2.1(b)(2)(A), there is a 2-level increase because the offense involved the commission of a sexual act or sexual contact. [Subtotal: 38.]

    h. Pursuant to USSG §2G2.1(b)(5), there is a two (2) level increase because the minor was in the care, custody, or supervisory control of the defendant. [Subtotal: 40].

Group Three: Sexual Exploitation of Minor Victim 2 on August 10, 2019

    i.    The base offense level for sexual exploitation of a child is 32, pursuant to USSG §2G2.1(a).

    j.    Pursuant to USSG §2G2.1(b)(1)(B), there is a four (4) level increase because the victim in this case was under the age of 12 at the time of the offense. [Subtotal: 36].

    k.    Pursuant to USSG §2G2.1(b)(2)(A), there is a 2-level increase because the offense involved the commission of a sexual act or sexual contact. [Subtotal: 38.]

    l.    Pursuant to USSG §2G2.1(b)(5), there is a two (2) level increase because the minor was in the care, custody, or supervisory control of the defendant. [Subtotal: 40].

Group Four: Sexual Exploitation of Minor Victim 2 on October 19, 2019

    e.    The base offense level for sexual exploitation of a child is 32, pursuant to USSG §2G2.1(a).

    m.    Pursuant to USSG §2G2.1(b)(1)(B), there is a four (4) level increase because the victim in this case was under the age of 12 at the time of the offense. [Subtotal: 36].

    n.    Pursuant to USSG §2G2.1(b)(2)(A), there is a 2-level increase because the offense involved the commission of a sexual act or sexual contact. [Subtotal: 38.]

    o.    Pursuant to USSG §2G2.1(b)(5), there is a two (2) level increase because the minor was in the care, custody, or supervisory control of the defendant. [Subtotal: 40].

Group Five: Sexual Exploitation of Minor Victim 1 on February 26, 2020

    p.    The base offense level for sexual exploitation of a child is 32, pursuant to USSG §2G2.1(a).

    q.    Pursuant to USSG §2G2.1(b)(1)(B), there is a four (4) level increase because the victim in this case was under the age of 12 at the time of the offense. [Subtotal: 36].

    r.    Pursuant to USSG §2G2.1(b)(2)(A), there is a 2-level increase because the offense involved the commission of a sexual act or sexual contact. [Subtotal: 38.]

  s. Pursuant to USSG §2G2.1(b)(5), there is a two (2) level increase because the minor was in the care, custody, or supervisory control of the defendant. [Subtotal: 40].

Grouping:

  t. Pursuant to USSG §§3D1.2(d) and 3D1.4, sexual exploitation of the minor victims on different days does not group. The group with the highest offense level is 40 (Group Two) and there is 1 additional group equally serious or from 1 to 4 levels less serious (Groups Three through Five), for a total of 4 units. Group One is nine (9) levels less serious, so it is disregarded. Thus, pursuant to USSG §§3D1.4, 4 levels are added to Group Two. (Subtotal: 44).

Acceptance of Responsibility:

  u. This Office does not oppose a 2-level reduction in the Defendant's adjusted offense level pursuant to U.S.S.G. § 3E1.1(a), based upon the Defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for the Defendant's criminal conduct. This Office agrees to make a motion pursuant to U.S.S.G. § 3E1.1(b) for an additional 1-level decrease in recognition of the Defendant's timely notification of the Defendant's intention to enter a plea of guilty. This Office may oppose any adjustment for acceptance of responsibility under U.S.S.G. § 3E1.1(a) and may decline to make a motion pursuant to U.S.S.G. § 3E1.1(b), if the Defendant: (i) fails to admit each and every item in the factual stipulation; (ii) denies involvement in the offense; (iii) gives conflicting statements about the Defendant's involvement in the offense; (iv) is untruthful with the Court, this Office, or the United States Probation Office; (v) obstructs or attempts to obstruct justice prior to sentencing; (vi) engages in any criminal conduct between the date of this Agreement and the date of sentencing; (vii) attempts to withdraw the plea of guilty; or (viii) violates this Agreement in any way. [Subtotal: 41].

  8. There is no agreement as to the Defendant's criminal history and the Defendant understands that the Defendant's criminal history could alter the Defendant's offense level. Specifically, the Defendant understands that the Defendant's criminal history could alter the final offense level if the Defendant is determined to be a career offender or if the instant offense was a part of a pattern of criminal conduct from which the Defendant derived a substantial portion of the Defendant's income.

  9. Other than as set forth above, no other offense characteristics, sentencing guidelines factors, potential departures or adjustments set forth in the United States Sentencing Guidelines are in dispute or will be raised in calculating the advisory guidelines range.

Agreed Conditions of Supervised Release

Rev. August 2018

10. The parties stipulate and agree to the following conditions of supervised release:

   a. You must not have direct contact with any child you know or reasonably should know to be under the age of 18 without the permission of the probation officer. If you do have any direct contact with any child you know or reasonably should know to be under the age of 18, without the permission of the probation officer, you must report this contact to the probation officer within 24 hours. Direct contact includes written communication, in-person communication, or physical contact. Direct contact does not include incidental contact during ordinary daily activities in public places.

   b. You must not have contact, direct or indirect, with the minor victims of this offense.

   c. You must allow the probation officer to install computer monitoring software on any computer (as defined in 18 U.S.C. § 1030(e)(1)) you use.

   d. To ensure compliance with the computer monitoring condition, you must allow the probation officer to conduct initial and periodic unannounced searches of any computers (as defined in 18 U.S.C. § 1030(e)(1)) subject to computer monitoring. These searches shall be conducted for the purposes of determining whether the computer contains any prohibited data prior to installation of the monitoring software; to determine whether the monitoring software is functioning effectively after its installation; and to determine whether there have been attempts to circumvent the monitoring software after its installation. You must warn any other people who use these computers that the computers may be subject to searches pursuant to this condition.

   e. You must submit to periodic polygraph testing at the discretion of the probation officer as a means to ensure that you are in compliance with the requirements of your supervision or treatment program.

## Obligations of the Parties

11. At the time of sentencing, this Office will move to dismiss any open counts against the Defendant.

12. The parties reserve the right to bring to the Court's attention all information with respect to the Defendant's background, character, and conduct that this Office or the Defendant deem relevant to sentencing, including the conduct that is the subject of any counts of the Indictment.

## Waiver of Appeal

13. In exchange for the concessions made by this Office and the Defendant in this Agreement, this Office and the Defendant waive their rights to appeal as follows:

a. The Defendant knowingly waives all right, pursuant to 28 U.S.C. § 1291 or any other statute or constitutional provision, to appeal the Defendant's conviction on any ground whatsoever. This includes a waiver of all right to appeal the Defendant's conviction on the ground that the statute(s) to which the Defendant is pleading guilty is unconstitutional, or on the ground that the admitted conduct does not fall within the scope of the statute(s), to the extent that such challenges legally can be waived.

b. The Defendant and this Office knowingly and expressly waive all rights conferred by 18 U.S.C. § 3742 to appeal whatever sentence is imposed (including any term of imprisonment, fine, term of supervised release, or order of restitution) for any reason (including the establishment of the advisory sentencing guidelines range, the determination of the Defendant's criminal history, the weighing of the sentencing factors, and any constitutional challenges to the calculation and imposition of any term of imprisonment, fine, order of forfeiture, order of restitution, and term or condition of supervised release).

c. The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned matter and agrees not to file any request for documents from this Office or any investigating agency.

Forfeiture

14. a. The Defendant understands that the Court may enter an Order of Forfeiture as part of the Defendant's sentence, and that the Order of Forfeiture may include assets directly traceable to the offense, substitute assets, and/or a money judgment equal to the value of the property derived from, or otherwise involved in, the offenses.

b. Specifically, but without limitation on the Government's right to forfeit all property subject to forfeiture as permitted by law, the Defendant agrees to forfeit to the United States all of the Defendant's right, title, and interest in the following items that the Defendant agrees constitute money, property, and/or assets derived from or obtained by the Defendant as a result of, or used to facilitate the commission of, the Defendant's illegal activities, including the following items, originally seized by law enforcement authorities from the Defendant on or about March 3, 2020:

    1. A ZTE Z981 ZMax Pro phone.

c. The Defendant agrees to consent to the entry of orders of forfeiture for the property described herein and waives the requirements of Federal Rules of Criminal Procedure 11(b)(1)(J), 32.2, and 43(a) regarding notice of the forfeiture in the charging instrument, advice regarding forfeiture during the change of plea hearing, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment.

d. The Defendant agrees to assist fully in the forfeiture of the above property. The Defendant agrees to disclose all assets and sources of income, to consent to all requests for access to information related to assets and income, and to take all steps necessary to pass clear title to the forfeited assets to the United States, including executing all documents necessary to transfer

such title, assisting in bringing any assets located outside of the United States within the jurisdiction of the United States, and taking whatever steps are necessary to ensure that assets subject to forfeiture are made available for forfeiture.

    e.  The Defendant waives all challenges to any forfeiture carried out in accordance with this Agreement on any grounds, including any and all constitutional, legal, equitable, statutory, or administrative grounds brought by any means, including through direct appeal, habeas corpus petition, or civil complaint. The Defendant will not challenge or seek review of any civil or administrative forfeiture of any property subject to forfeiture under this Agreement, and will not assist any third party with any challenge or review or any petition for remission of forfeiture.

## Restitution

15.  The Defendant agrees to the entry of a restitution order for the full amount of the Victims' losses. The Defendant agrees that, pursuant to 18 U.S.C. §§ 3663 and 3663A and 3563(b)(2) and 3583(d), the Court may order restitution of the full amount of the actual, total loss caused by the offense conduct set forth in the factual stipulation.

16.  The total amount of restitution shall be due immediately and shall be ordered to be paid forthwith. Any payment schedule imposed by the Court establishes only a minimum obligation. Defendant will make a good faith effort to pay any restitution. Regardless of Defendant's compliance, any payment schedule does not limit the United States' ability to collect additional amounts from Defendant through all available collection remedies at any time. The Defendant further agrees that the Defendant will fully disclose to this Office, the probation officer, and to the Court, subject to the penalty of perjury, all information (including but not limited to copies of all relevant bank and financial records) regarding the current location and prior disposition of all funds obtained as a result of the criminal conduct set forth in the factual stipulation. The Defendant further agrees to take all reasonable steps to retrieve or repatriate any such funds and to make them available for restitution. If the Defendant does not fulfill this provision, it will be considered a material breach of this Agreement, and this Office may seek to be relieved of its obligations under this Agreement.

## Restitution in Cases Involving the Sexual Exploitation of Children

17.  Pursuant to 18 U.S.C. § 3663(a)(3), 18 U.S.C. § 3663A(a) & (b), 18 U.S.C. § 3664, and 18 U.S.C. § 2259, the defendant agrees to make full restitution to all minor victims of his offenses as to all counts charged, whether or not the defendant enters a plea of guilty to such counts and whether or not such counts are dismissed pursuant to this agreement. Further, the defendant agrees to pay restitution to any of his minor victims, for the entire scope of his criminal conduct, including but not limited to all matters included as relevant conduct. The defendant acknowledges and agrees that this criminal conduct (or relevant conduct) includes any minor victim of any child pornography offenses, charged or uncharged, under Chapter 110, United States Code, and any minor victim of any violation of federal and/or state law committed by the defendant, including any contact sexual offense. Further, pursuant to 18 U.S.C. § 3664(d)(5), the defendant agrees not

to oppose bifurcation of the sentencing hearing if the victims' losses are not ascertainable prior to sentencing.

### Additional Special Assessments in Sex Crimes Cases

18. Pursuant to 18 U.S.C. § 3014 (the Justice for Victims of Trafficking Act "JVTA"), since the offense of conviction is under Chapter 110 (relating to sexual exploitation and other abuse of children), the Defendant must also pay an additional special assessment of $5,000, unless the Defendant is indigent.

19. Assessments in Child Pornography Cases: Pursuant to 18 U.S.C. § 2259A (the Amy, Vicky, and Andy Child Pornography Victim Assistance Act "AVAA"), in addition to any other criminal penalty, restitution, or special assessment authorized by law, the court shall assess- (1) not more than $17,000 on any person convicted of an offense under section 2252(a)(4) or 2252A(a)(5); (2) not more than $35,000 on any person convicted of any other offense for trafficking in child pornography; and (3) not more than $50,000 on any person convicted of a child pornography production offense.

### Defendant's Conduct Prior to Sentencing and Breach

20. Between now and the date of the sentencing, the Defendant will not engage in conduct that constitutes obstruction of justice under USSG §3C1.1; will not violate any federal, state, or local law; will acknowledge guilt to the probation officer and the Court; will be truthful in any statement to the Court, this Office, law enforcement agents, and probation officers; will cooperate in the preparation of the presentence report; and will not move to withdraw from the plea of guilty or from this Agreement.

21. If the Defendant engages in conduct prior to sentencing that violates the above paragraph of this Agreement, and the Court finds a violation by a preponderance of the evidence, then: (i) this Office will be free from its obligations under this Agreement; (ii) this Office may make sentencing arguments and recommendations different from those set out in this Agreement, even if the Agreement was reached pursuant to Rule 11(c)(1)(C); and (iii) in any criminal or civil proceeding, this Office will be free to use against the Defendant all statements made by the Defendant and any of the information or materials provided by the Defendant, including statements, information, and materials provided pursuant to this Agreement, and statements made during proceedings before the Court pursuant to Rule 11 of the Federal Rules of Criminal Procedure. A determination that this Office is released from its obligations under this Agreement will not permit the Defendant to withdraw the guilty plea. The Defendant acknowledges that the Defendant may not withdraw the Defendant's guilty plea—even if made pursuant to Rule 11(c)(1)(C)—if the Court finds that the Defendant breached the Agreement. In that event, neither the Court nor the Government will be bound by the specific sentence or sentencing range agreed and stipulated to herein pursuant to Rule 11(c)(1)(C).

### Court Not a Party

Rev. August 2018

22.     The Court is not a party to this Agreement. The sentence to be imposed is within the sole discretion of the Court. The Court is not bound by the Sentencing Guidelines stipulation in this Agreement. The Court will determine the facts relevant to sentencing. The Court is not required to accept any recommendation or stipulation of the parties. The Court has the power under Rule 11(c)(5) to reject the plea agreement entered into under Rule 11(c)(1)(C). Neither the prosecutor, defense counsel, nor the Court can make a binding prediction, promise, or representation as to whether the Court will accept the plea agreement entered into under Rule 11(c)(1)(C). The Defendant agrees that no one has made such a binding prediction or promise.

### Entire Agreement

23.     This letter, together with the Sealed Supplement, constitutes the complete plea agreement in this case. This letter, together with the Sealed Supplement, supersedes any prior understandings, promises, or conditions between this Office and the Defendant. There are no other agreements, promises, undertakings, or understandings between the Defendant and this Office other than those set forth in this letter and the Sealed Supplement. No changes to this Agreement will be effective unless in writing, signed by all parties and approved by the Court.

If the Defendant fully accepts each and every term and condition of this Agreement, please sign and have the Defendant sign the original and return it to me promptly.

Very truly yours,

Erek L. Barron
United States Attorney

_____
Judson T. Mihok
Assistant United States Attorney

I have read this Agreement, including the Sealed Supplement, and carefully reviewed every part of it with my attorney. I understand it and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

03/28/22                            Calvin Sampson III
_____                     _____
Date                                Calvin Henry Sampson, III

I am the Defendant's attorney. I have carefully reviewed every part of this Agreement, including the Sealed Supplement with the Defendant. The Defendant advises me that the Defendant understands and accepts its terms. To my knowledge, the Defendant's decision to enter into this Agreement is an informed and voluntary one.

3/28/22
Date

_[signature]_
Katherine Tang Newberger

## Attachment A

*The undersigned parties hereby stipulate and agree that the following facts are true and accurate, and that if this matter had gone to trial, the government would have proven the following facts beyond a reasonable doubt. The undersigned parties also stipulate and agree that the following facts do not encompass all of the evidence that would have been presented had this matter gone to trial.*

Calvin Henry Sampson, III ("Sampson"), born in 1999, is a resident of Baltimore, Maryland. As detailed below, on at least four occasions, Sampson sexually exploited two prepubescent minor females, Minor Victim 1 (born in 2010) and Minor Victim 2 (born in 2014), and produced videos of the exploitation.

On March 3, 2020, an individual observed images depicting the sexual abuse of Minor Victim 1 and Minor Victim 2 on Sampson's phone. On March 12, 2020, as part of the follow up investigation, Minor Victim 1 was interviewed and disclosed that "Calvin" rubbed his "private area" on her, touched her private area with his hand, told her to "suck it," and that he licked her private area. Minor Victim 1 said that "white stuff" came out of his private area and that he put the white stuff on her private area. She said Calvin took pictures of her private parts, backside, and Calvin's private area on her with his phone. Calvin told her she would get in trouble if she did not do it. Minor Victim 1 stated that the first time something like this occurred was when she was 7-years-old when Calvin visited her family and that the first time occurred in a bathroom. During the first time, Calvin had Minor Victim 1 sit on top of a toilet with her knees up and took a picture of her butt. Minor Victim 1 said that Calvin took the pictures with his old phone that is now broken and that Calvin has since gotten a new phone.

On March 12, 2020, Minor Victim 2 was interviewed and disclosed that "Calvin" took pictures of her private area and butt. Minor Victim 2 stated that Calvin put his finger in her private area and put his private area on her private area. Minor Victim 2 stated Calvin "peed" on her and used a blanket to wipe her. Calvin told Minor Victim 2 if she told her mother she would get in trouble and get a "butt whooping."

On March 25, 2020, state search warrants for the Google accounts mtmrapgodshit25@gmail.com, calvinsampson1998@gmail.com and calvinsampson16@gmail.com and to search the ZTE cell phone were approved and executed.

The review of the Google Photos, which included content associated with the account through April 7, 2020, associated with calvinsampson16@gmail.com revealed at least eight videos, two gifs, and twenty-nine images that appear to be homemade. Four (4) of the videos and twenty-one (21) of the images were produced by Sampson on the dates indicated in Counts One through Four of the Indictment, specifically:

1

1. On or about July 26, 2019, Sampson did produce nine images that are focused on a prepubescent female's vagina (Minor Victim 1), six of which show a hand touching or spreading her vagina, and one video, approximately 24 seconds long, titled "VID_20190726_154748.mp4" depicting Minor Victim 1 laying down with her legs in the air and her vagina exposed to the camera as a male masturbates and ejaculates on her vagina, said files having been saved in the Google Photos internet-based account calvinsampson16@gmail.com.
2. On or about August 10, 2019, Sampson did produce three images and two videos that are focused on a prepubescent female's vagina (Minor Victim 2), with one video, titled "VID_20190810_102008.mp4" approximately 1 minute 16 seconds long, depicting Minor Victim 2 laying down with her legs in the air and her vagina exposed to the camera as a male masturbates and ejaculates on Minor Victim 2's vagina, then wipes Minor Victim 2's vagina with a blanket, said files having been saved in the Google Photos internet-based account calvinsampson16@gmail.com.
3. On or about October 19, 2019, Sampson did produce five images that are focused on Minor Victim 2's vagina, two of which show a hand touching Minor Victim 2's vagina, said files having been saved in the Google Photos internet-based account calvinsampson16@gmail.com.
4. On or about February 26, 2020, Sampson did produce four images that are focused on Minor Victim 1's vagina, and one video, titled "20200226_173547.mp4" approximately 1 minute and 27 second long, that depicts the penis of an adult male penetrating the mouth of Minor Victim 1, said files having been saved in the Google Photos internet-based account calvinsampson16@gmail.com.

Many of the homemade images contained EXIF metadata which revealed the date and time the pictures were created, the make and model of the camera that took the pictures, and the GPS coordinates of where the pictures were taken. The dates were between December 11, 2017, and February 26, 2020. The various cameras used to take the pictures were a Samsung SM-G550T1, a Samsung SM-J327P, a Samsung SM-J327P4, a ZTE Z981, and a Coolpad 3622A, however only the ZTE Z981 ZMax Pro cell phone was recovered. At the time the images and videos were created by Sampson, he was babysitting for Minor Victim 1 and Minor Victim 2.

The ZTE Z981 ZMax Pro cell phone was forensically examined on or about March 26, 2020. After the cell phone was charged, it was turned on. It appeared that the cell phone had been factory reset and did not contain any user specific data.

On approximately April 11, 2020, Sampson was arrested by a Baltimore City Police Officer. Sampson was charged with Sexual Abuse of a Minor, Third Degree Sex Offense, and Second Degree Assault. These charges are related to a separate investigation regarding a different minor female, not Minor Victim 1 or Minor Victim 2. Sampson has been held without bond since the time of his arrest.

<u>Materials in Interstate Commerce & Transportation of Images in Interstate Commerce:</u>

Sampson produced, transferred, and/or stored the images and videos of Minor Victim 1 and Minor Victim 2 using a ZTE Z981 ZMax Pro Phone that was manufactured outside of the United States. In addition, Sampson possessed them in an account associated with Google, which was hosted and stored on servers outside the state of Maryland. The depictions were therefore were both produced and possessed using materials that have been mailed, shipped, and transported in and affecting interstate and foreign commerce by any means, including by computer.

I have reviewed the foregoing statement of facts with my attorney, understand it, agree with it, and do not wish to change any part of it. I further understand that it is included as part of my plea agreement with the government in this case.

03/28/22
Date

Calvin Henry Sampson, III

I am Mr. Sampson's attorney. I have carefully reviewed the statement of facts with him. He acknowledges it is true and correct and he knowingly and voluntarily agrees to it.

3/28/22
Date

Katherine Tang Newberger, Esq.